**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 13 |
| CAROLINE JOYCE RELLSTAB, | ) | Case No. 17-40210-CJP |
| | ) | |
| Debtor. | ) | |
| | ) | |

**ORDER ON DEBTOR'S MOTION PURSUANT TO 11 U.S.C. § 362(K) AGAINST U.S. BANK N.A. SEEKING THE ASSESSMENT OF DAMAGES FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY**

Before the Court is the motion [Dkt. No. 200] (the "Motion") filed by the debtor Caroline Joyce Rellstab (the "Debtor") seeking an award of actual and punitive damages pursuant to 11 U.S.C § 362(k)[1] against U.S. Bank National Association, as Trustee for SASCO Mortgage Loan Trust 2006-WF3 (the "Bank"). The Debtor alleges the Bank willfully violated the automatic stay based on the Bank's postponements of and eventual conduct of the foreclosure of the Debtor's investment property located at 27 Maple Street, Spencer, MA (the "Property"). The Bank objected to the Motion on the grounds that the Debtor did not allege facts that state a claim for a willful violation of the automatic stay [Dkt. No. 215] (the "Objection"). For the reasons below, the Court DENIES the Motion.[2]

---

[1] Unless otherwise noted, all section references herein are to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*., as amended (the "Bankruptcy Code").

[2] Prior to filing the Motion, the Debtor had filed a multi-count complaint challenging the Bank's title to the Property obtained pursuant to the foreclosure sale. The Debtor alleged that the Bank had failed to comply with statutory foreclosure requirements and that the foreclosure sale was invalid. The Court held a status conference on the Motion and determined it would "consider whether oral argument is required on the issue of whether the Motion should be denied or proceed to an evidentiary hearing. The Motion [wa]s consolidated for discovery and any trial with Adversary Proceeding 17-4066 [(the "Adversary

1

## BACKGROUND

The Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code on February 3, 2017 (the "Petition Date"), prior to a foreclosure sale that had been scheduled by the Bank for that same day with respect to its mortgage on the Debtor's Property. After it received notice that the Debtor had filed her bankruptcy petition, the Bank postponed the foreclosure sale by announcing "upon the mortgaged premises" that the sale would be postponed to March 15, 2017, as reflected in an affidavit of sale signed by the Bank's representative (the "Affidavit of Sale"). *See* Aff. of Sale, Mot. Ex A. After the first postponement, and prior to filing a motion for relief from the automatic stay, the Bank postponed the foreclosure sale two other times: from March 15, 2017 to May 15, 2017, and again from May 15, 2017 to July 15, 2017. *See id.* On May 17, 2017, the Bank filed a motion for relief from the automatic stay under § 362(d)(1), (2), and (4) (the "Motion for Relief"), seeking, among other things, to exercise its rights under its mortgage covering the Property.[3] Following a hearing on June 13, 2017, the Court granted the Motion for Relief in part [Dkt. No. 85] (the "Stay Relief Order"), denying in rem relief under § 362(d)(4), but permitting the Bank to exercise its rights under the mortgage and applicable law to conduct a foreclosure sale, apply the proceeds of such sale to the loan balance, and bring an eviction action, if necessary. The Court's Stay Relief Order provided that the Bank shall act in accordance with applicable state and federal law.[4]

---

Proceeding")]. . . ." *See* Ord. at Dkt. No. 217. By entry of this Order, the Court has determined that oral argument with respect to the Motion is unnecessary.

[3] The Debtor's obligation to the Bank was also secured by an assignment of rents.

[4] Additionally, at that same hearing on June 13, 2017, the Court heard Debtor's motion to stop the Bank's "negative advertising." The Debtor alleged that the Bank's internet "advertising" of the foreclosure sale intentionally violated the stay and caused her harm. The Court denied Debtor's motion without prejudice.

**POSITIONS OF THE PARTIES**

The Debtor asserts that each of the three postponements of the foreclosure sale are void under state and federal law and violated the automatic stay.  Since a public proclamation was not statutorily required to postpone the first scheduled date,[5] the Debtor contends that the Bank, by physically entering onto the Property and publicly proclaiming the postponement as recited in its Affidavit of Sale, chose the "most intrusive method" to give notice and that such action thereby violated the stay as an act of exercising control over the property and of enforcing its lien in violation of § 362(a)(3) and (4), respectively.  Mot. ¶¶ 20-21.  The Debtor further asserts that there is evidence that the Affidavit of Sale is false in violation of Massachusetts law, because the first postponement was not announced at the Property as claimed therein.[6]  The Debtor argues that the foreclosure sale that the Bank ultimately conducted on October 20, 2017 is also void under Massachusetts law because the Bank's Affidavit of Sale does not comply with M.G.L. ch.

---

[5] Public proclamations are a permissible means of postponing a sale, but are not required so long as the initial statutory notice requirements are met.  *See Chaves v. U.S. Bank*, 335 F. Supp. 100, 110-11 (D. Mass. 2018); *Fitzgerald v. First Nat'l. Bank of Boston*, 703 N.E.2d 1192, 1194 (Mass. App. Ct. 1999).  The Debtor also concedes that "to have a commercially reasonable continuation of a foreclosure sale a mortgagee can either make a 'public proclamation' or . . . use any other method of continuance as long as such method protects the mortgagor's interest under given circumstances," Mot. ¶ 17. It is not necessary for this Court to resolve whether the Bank complied with notice requirements to decide this Motion, as explained in the discussion section below. The Court recognizes, however, that these issues may be material in the Adversary Proceeding or in relation to other claims that could be asserted by the Debtor.

[6] In support of the Motion, the Debtor filed the affidavit of Cynthia L. Bruder (the "Bruder Affidavit"), who claims to have attempted to negotiate a "short sale" to purchase the Property prepetition and to have been at the Property on February 3, 2017 at 3:00 p.m. for the foreclosure auction, after deciding to attend "[w]hen we ran into problems getting assent for the short sale." *See* Bruder Aff. ¶¶ 2, 4, Mot., Ex. B.  Ms. Bruder states that no other person was at the Property on February 3, 2017 and no public proclamation was made physically on the premises. *See id.* at ¶¶ 7, 9. Ms. Bruder also states that, while waiting at the auction site in her car, she checked the auction house's website and found that the auction had been postponed. *See id.* at ¶ 7.

3

244 § 15 since it purportedly contains a false statement regarding Bank's postponement by public proclamation, and such false statement constitutes perjury. *See id.* at ¶¶ 25-27.[7]

Citing *Lynn-Weaver v. ABN-AMRO Mortg. Grp., Inc. (In re Lynn-Weaver),* 385 B.R. 7 (Bankr. D. Mass. 2008), the Debtor further asserts that the second and third postponements in March and May also violated the automatic stay because the Bank had not obtained relief from the automatic stay prior to postponing the sale and because, according to Bank's Affidavit of Sale, those postponements were similarly made by public proclamation "upon the mortgaged premises," which constituted acts to exercise of control over property of the estate and to enforce a lien in violation of § 362(a)(3) and (a)(4). *See* Aff. of Sale. The Debtor argues that the Court should find that the Bank intentionally violated the automatic stay because of its actions in postponing the sale.

After the Court entered the Stay Relief Order on June 14, 2017, the Bank conducted a foreclosure auction on October 20, 2017.[8] The Debtor contends that the foreclosure sale, itself, violated Massachusetts law because the postponement announcements were either insufficient under Massachusetts law or were void because they violated the automatic stay and, therefore, could not constitute sufficient notice of the sale. Building on this, the Debtor contends that the auction violated the automatic stay because it did not comply with the Court's Stay Relief Order, which required the Bank to comply with Massachusetts law.

---

[7] The Bank denies that it failed comply with Massachusetts foreclosure law, but does not further clarify whether it made physical entry onto the property to postpone the foreclosure. *See* Obj. 9 n.3.

[8] The Debtor sought reconsideration of "removal of the automatic stay," which the Court denied on September 7, 2017. In the Adversary Proceeding, the Court also entered an order on December 20, 2017 [Adv. Pro. Dkt. No. 17] (the "Injunctive Relief Order") with respect to the Debtor's request for a preliminary injunction preserving the status quo as to the Property by agreement of the Debtor and the Bank. The Injunctive Relief Order provided instructions regarding rent collection, *inter alia*, and was without prejudice to the Debtor or Bank seeking modification of the order at any time or asserting any position in the Adversary Proceeding.

4

The Bank asserts that that *Lynn-Weaver* is not binding precedent and urges the Court to follow the line of cases holding that continuing a foreclosure sale, without more, does not advance the foreclosure process and, therefore, does not violate the automatic stay. *See, e.g., Witkowski v. Knight (In re Witkowski),* 523 B.R. 291, 300 (B.A.P. 1st Cir. 2014), abrogated on other grounds by *Smith v. Me. Bureau of Revenue Services (In re Smith)*, 910 F.3d 576 (1st Cir. 2018). Moreover, the Bank maintains that this Court is bound to reach this result by the holding of the First Circuit Court of Appeals in *Martir Lugo v. De Jesus Saez (In re De Jesus Sanchez)*, 721 F.2d 848 (1st Cir. 1983), citing *Perez v. Deutsche Bank Nat'l Trust Co. (In re Perez),* 556 B.R. 527 (B.A.P. 1st Cir. 2016). *See In re Perez*, 556 B.R. at 534-35 (concluding that *In re De Jesus Sanchez* was binding precedent and that a second post-petition postponement of a Massachusetts non-judicial foreclosure sale did not, by itself, violate the automatic stay).

## DISCUSSION

Under § 362(k), a debtor must prove by a preponderance of the evidence that the creditor took action that violated the stay, the act was committed willfully, and the debtor suffered damages. *See In re Steenstra*, 280 B.R. 560, 566 (Bankr. D. Mass. 2002) (citations omitted); *see also Fleet Mortg. Grp., Inc. v. Kaneb,* 196 F.3d 265, 269 (1st Cir. 1999) (explaining that no specific intent to commit violation required); *Vázquez Laboy v. Doral Mortg. Corp. (In re Vázquez Laboy)*, 647 F.3d 367, 371 n.7 (1st Cir. 2011) (recognizing that § 362(k), not (h), now governs damages for willful stay violations and that the standard is unchanged). "[C]ommencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case" violates the automatic stay pursuant to § 362(a)(1). 11 U.S.C. § 362(a)(1). Additionally, "any act to create, perfect, or enforce against

the property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case" constitutes a stay violation under § 362(a)(5). *Id*. at § 362(a)(5); *see also id*. at § 362(a)(4) (prohibiting acts to enforce a lien against property of the estate).

Postponing the date of a foreclosure sale is not a *per se* violation of any of the automatic stay provisions of § 362(a). Rather, it is an act that, without more, merely maintains the status quo between the parties.[9] *See, e.g., In re De Jesus Sanchez*, 721 F.2d at 853 (addressing whether the act of postponing and re-advertising a sheriff's sale post-petition violated the stay and determining it did not because the mortgagee "did little more than reschedule the auction and advertise the new date from the time he learned of the petition until its dismissal" and "that these preparatory acts [neither] harassed [the debtor nor] revived the financial pressures that drove [the debtor] into bankruptcy") (internal quotations and citations omitted); *In re Perez,* 556 B.R. at 534-36 (applying *In re De Jesus Sanchez* and concluding the creditor did not violate the automatic stay when it announced a second post-petition postponement without having obtained relief from stay); *In re Witkowski*, 523 B.R. at 300 (post-petition foreclosure postponement from month to month did not violate the stay pursuant to § 362(a)(1) as a continuation of an action because the postponement only maintained the status quo without prejudice to the debtor). The

---

[9] It appears that this interpretation of § 362(a) has been recognized as the majority view by other courts. *See, e.g., Henson v. Bank of America, N.A. (In re Henson)*, 477 B.R. 786, 789, 791 (Bankr. D. Colo. 2012) (recognizing that "all of the circuit courts that have examined the issue have held that continuing a foreclosure sale date in the manner provided by state law does not violate the automatic stay" and agreeing with the "overwhelming weight of authority" in holding that continuing a foreclosure sale date week to week in a manner consistent with state law does not violate the automatic stay); *In re Atlas Mach. & Iron Works, Inc. v. Bethlehem Steel Corp. (In re Atlas Mach. & Iron Works, Inc.)*, 239 B.R. 322, 332 (Bankr. E.D. Va. 1998) (finding "that, as the majority of courts in similar scenarios have ruled, that the postponements of the foreclosure sales, the legal notices accompanying them, and the letter to interested parties were actions taken to maintain the status quo and are not violations of the automatic stay"); *Zeoli v. RIHT Mortg. Corp.*, 148 B.R. 698, 700-1 (D.N.H. 1993) (determining "[u]nder what appears to be the prevailing view, [that] postponing a foreclosure sale is not violative of the automatic stay provisions [because] it is not an act in 'continuation' of a proceeding 'against the debtor' prohibited by § 362(a)(1). Rather, it is more appropriately characterized as an act in preservation of a stayed proceeding").

6

Court agrees with the conclusion of the First Circuit Bankruptcy Appellate Panel in *Perez* that the reasoning of *In re De Jesus Sanchez* applies equally to cases involving the post-petition postponement of a non-judicial foreclosure sale, regardless of whether *In re De Jesus Sanchez* should be considered binding precedent on the issue instead of just analogous or persuasive authority. *See In re Perez,* 556 B.R. at 535-36.

The Debtor relies on *Lynn-Weaver* to support her position that the Bank violated the stay when it postponed the sale more than once before moving for relief from the automatic stay. *See* 385 B.R. at 11-12. In *Lynn–Weaver*, Judge Hillman explained his earlier ruling in *In re Heron Pond, LLC*, in which he had provided a safe harbor for mortgagees from violating the automatic stay for "a single continuance of a foreclosure sale following the filing of a petition . . . if, before the continued sale date, the creditor filed an appropriate motion for relief from stay." *See id.* (citing *In re Heron Pond, LLC,* 258 B.R. 529, 530 (Bankr. D. Mass. 2001)). In recognizing this "limited right of a mortgagee," Judge Hillman also considered the reasoning of *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 19 (1995), stating:

> "In *Strumpf*, the court held that a bank's placing of an administrative freeze on the account of a chapter 13 debtor pending resolution of the bank's right of setoff against the debtor did not violate automatic stay. In so holding, the Court held that the bank's action was not a setoff within the meaning of § 362(a)(7) (staying the exercise of any right of setoff against the debtor) because the bank had not permanently and absolutely refused to pay its debt to the debtor 'but only while it sought relief under § 362(d) from the automatic stay.' *Id*., 516 U.S. at 19, 116 S.Ct. at 289."

*In re Lynn-Weaver*, 385 B.R. at 11 n.3. Applying that reasoning in relation to postponement of a foreclosure sale, the *Lynn-Weaver* court held that a single continuance of a foreclosure sale was a "temporary place-holding measure intended only to secure the status quo for a brief time until a motion for relief from stay could be filed." *Id.* at 11. However, because the mortgagee in *Lynn–Weaver* had continued the foreclosure sale initially and did not move for relief from stay prior to

expiration of the initial continuance, and then continued the date of the foreclosure sale four additional times without obtaining relief from stay, the Court concluded that each of the continuances constituted a violation of the automatic stay under § 362(a)(1). *See id.* at 11–12.

While *Heron Pond* and *Lynn-Weaver* have served for many years as guideposts in this District for best practices in relation to post-petition postponement of foreclosure sales, this Court concludes that a mortgagee that postpones a foreclosure auction date more than once does not necessarily violate the automatic stay. While facts similar to *Lynn-Weaver* could certainly lead to an inference that a mortgagee was attempting to harass a debtor and coerce payment or more favorable treatment in the bankruptcy case,[10] this Court does not read § 362(a)(1) to require that a mortgagee seek relief from the automatic stay in all cases immediately after first postponing an auction date post-petition or prior to subsequent postponements, as long as the purpose of a postponement is only to maintain the status quo where the mortgagee has a good faith belief that it is entitled to relief from the automatic stay and intends to seek such relief to foreclose its mortgage. *See In re De Jesus Sanchez*, 721 F.2d at 853; *In re Perez*, 556 B.R. at 534-36; *In re Witkowski*, 523 B.R. at 298-300.

For a mortgagee's postponement of a foreclosure sale to rise to the level of violating the automatic stay, its actions must harass the debtor or revive the financial pressures that drove the debtor into bankruptcy. *See In re De Jesus Sanchez,* 721 F.2d at 853; *In re Perez,* 556 B.R. at 534-35. The Debtor alleges no facts from which the Court could conclude that the Bank's actions were intended to revive her financial pressures or coerce or harass her, rather than preserve the status quo. Since the Bank's alleged actions in postponing the sale date do not

---

[10] In *Lynn-Weaver*, the mortgagee continued a foreclosure sale five times post-petition. *See* 385 B.R. at 9. The mortgagee had sought relief from stay after the second continuance, but the court had denied the motion for relief one day after the third continuance. *See id*. At the time of the fourth continuance, the debtor was current with her post-petition payments. *See id*.

8

permit the inference of an intent to harass or exert pressure, the alleged actions do not violate the automatic stay. *See In re Witkowski,* 523 B.R. at 299-300; *In re Hart,* 246 B.R. 709, 740 n.29 (Bankr. D. Mass. 2000) ("[T]he Court can conceive of circumstances in which postponement of a foreclosure sale may violate the automatic stay. For example, if a secured party repeatedly continued the foreclosure sale for brief periods, it is conceivable that harassment rather than the preservation of the status quo would be motivating the creditor and warrant judicial intervention."); *cf. In re DeJesus Sanchez,* 721 F.2d at 853 (concluding that the mortgagee "did little more than reschedule the auction and advertise the new date from the time he learned of the petition until its dismissal" and reasoning that the rescheduling was a preparatory act which does not violate the stay, absent a further showing of harassment or conduct that financially pressures the debtor).

The Debtor also asserts that, if the Bank entered on the mortgaged premises and postponed the scheduled sales by "public proclamation" prior to obtaining relief from the automatic stay, the Bank violated automatic stay by improperly "exercising control over the property of the estate." 11 U.S.C. § 362(a)(3). This claim presents a much closer call. The Court recognizes that in certain circumstances making entry on the Debtor's property—even briefly—could constitute an act to exercise control over property of the estate and violate the automatic stay.[11] In this case, however, the Debtor does not allege that she was deprived of the use or enjoyment of the Property as a result of an entry by the Bank or even that the Bank entered on the Property over the objection of the Debtor to announce the postponements. The allegations in the Motion are conclusory in that the Debtor simply points to the Bank's representation in the

---

[11] Courts generally define an "exercise of control" broadly under § 362(a)(3). *See, e.g., Lex Claims, LLC v. Fin, Oversight and Mgmt. Bd.,* 853 F.3d 548, 551-52 (1st Cir. 2017) (recognizing that courts have broadly defined "control" under § 362(a)(3)).

9

Affidavit of Sale that the postponements were announced by public proclamation "upon the mortgaged premises" and that such an announcement, alone, constitutes exercising control over the Property. Even drawing all inferences in favor of the Debtor, the Court is not able to read the Motion to allege anything more than that the Bank's representative purports to have stepped on the Property and to have announced postponements without objection by the Debtor. Absent an allegation of any other act or circumstances that could be interpreted as an attempt to exercise control of property of the estate,[12] the Court cannot conclude the Bank's actions constituted an act exercising control over the property of the estate in violation of § 362(a)(3) and, consequently, § 362(k).[13]

## CONCLUSION

Even though this Court has not applied the reasoning of *Lynn-Weaver* and *Heron Pond,* to find a *per se* violation of the automatic stay when a mortgagee announces multiple post-petition postponements of a foreclosure auction, the wisdom of the "best practices" that resulted from those decisions is apparent when one considers how easily a foreclosing mortgagee might engage in conduct from which an inference could be drawn that would result in liability under § 362(k), particularly where a mortgagee may announce multiple foreclosures without seeking relief from stay. Similarly, different allegations could easily give rise to an inference that a

---

[12] In relation to the first postponement, the Debtor offers the Bruder Affidavit stating that no representative of the Bank ever made entry and no proclamation occurred. Resolution of this factual issue may be relevant to compliance with Massachusetts law and the effectiveness of the foreclosure sale, but it is not necessary for the Court to reach these issues in the context of whether the stay has been violated.

[13] The Court is mindful that, at the time that this order will issue, the Supreme Court has under advisement a case that may decide issues clarifying what conduct is prohibited by § 362(a)(3). *See In re Fulton,* 926 F.3d 916 (7th Cir.), cert. granted sub nom. *City of Chicago v. Fulton,* 140 S.Ct. 680 (2019) (granting petition for writ of certiorari to resolve whether a creditor has the duty to turn over property of the estate that it has passively retained upon filing of a petition, where application of § 362(a)(3) is a central consideration).

mortgagee is exercising control over property of the estate where its agents enter upon a mortgaged property over the objection of a debtor. The Court is not making any determination as to whether the Bank's actions constituted commercially reasonable notice of the foreclosure sale as required by Massachusetts law or whether the purportedly false Affidavit of Sale complied with applicable Massachusetts law, which is the subject of the Adversary Proceeding.[14] The Court's ruling is limited to the determination that, with respect to the Motion, if the facts alleged were proven and reasonable inferences were drawn in favor of the Debtor, the Court could not conclude that the Bank violated the automatic stay. *See In re Witkowski*, 523 B.R. at 298.

Finally, the Court rejects the assertion by the Debtor that "to the extent U.S. National Bank's actions were conducted in violation of any state or federal laws applicable to the foreclosure sales that such actions were in violation of the [a]utomatic [s]tay" because the Court's Stay Relief Order granting the Motion for Relief contained the language "all in accordance with applicable state and federal law." Mot. ¶¶ 14, 24. The Court did not intend to limit relief from the automatic stay or provide a remedy under § 362(k) for violations of the Massachusetts foreclosure statutes, for which there exist remedies under state law. The Court intended that the Bank would have relief from stay to exercise additional remedies, such as eviction, as may be permitted by applicable state and federal law.

For these reasons, the Motion is DENIED.

Dated: November 10, 2020

By the Court,

_____
Christopher J. Panos
United States Bankruptcy Judge

---

[14] The Court also does not intend this order to limit any determination whether post-foreclosure conduct of the Bank was appropriate or whether the Bank has complied with the Injunctive Relief Order.